UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RICCO DEVON SLADE,

                              Plaintiff,

                -against-

CITY OF NEW YORK, ET AL.,

                              Defendants.

24-CV-0514 (LTS)

PARTIAL TRANSFER ORDER AND ORDER
TO AMEND

LAURA TAYLOR SWAIN, Chief United States District Judge:

Plaintiff, who is currently incarcerated at Elmira Correctional Facility, filed this *pro se*

action under 42 U.S.C. § 1983, while he was detained at the Otis Bantum Correctional Center on

Rikers Island. He names as defendants the City of New York and various entities and individuals

involved with his arrest, criminal proceedings, detention at Rikers Island, and hospitalization at

Bellevue Hospital. By order dated February 16, 2024, the Court granted Plaintiff's request to

proceed *in forma pauperis* ("IFP"), that is, without prepayment of fees.[1]

For the reasons set forth below, the Court severs Plaintiff's claims arising in Queens,

New York, and transfers them to the United States District Court for the Eastern District of New

York, and grants Plaintiff 60 days' leave to file an amended complaint with respect to his claims

arising at Rikers Island and Bellevue Hospital.

**STANDARD OF REVIEW**

The Prison Litigation Reform Act requires that federal courts screen complaints brought

by prisoners who seek relief against a governmental entity or an officer or employee of a

governmental entity. *See* 28 U.S.C. § 1915A(a). The Court must dismiss a prisoner's IFP

---

[1] Prisoners are not exempt from paying the full filing fee even when they have been
granted permission to proceed IFP. *See* 28 U.S.C. § 1915(b)(1).

complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b); *see Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007). The Court must also dismiss a complaint if the Court lacks subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3).

While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted) (emphasis in original). But the "special solicitude" in *pro se* cases, *id*. at 475 (citation omitted), has its limits – to state a claim, *pro se* pleadings still must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a complaint to make a short and plain statement showing that the pleader is entitled to relief.

## BACKGROUND

Plaintiff brings this action alleging that Defendants violated his rights under the First, Fourth, Sixth, Eighth, and Fourteenth Amendments in connection with his arrest, criminal proceedings, and detention. Named as defendants are: (1) the City of New York; (2) New York City Police Department ("NYPD"); (3) New York City Department of Correction ("DOC")[2]; (4) NYC Health & Hospitals ("H+H"); (5) Queens Defenders; (6) John Doe Detective # 1, Robbery Division; (7) John Doe Detective # 2, Robbery Division; (8) Peter Barta, Public Defender; and (9) Ms. Aggawal, "OM Doctor" at Bellevue Hospital. Plaintiff seeks money damages.

---

[2] Plaintiff refers to this defendant as "NYCD." (ECF 1, at 1.)

The following allegations are taken from the complaint. On December 28, 2022, Plaintiff was arrested for robbery by police officers from the NYPD-110th Precinct in Queens, New York. After the arrest, Plaintiff was interrogated at the 110th Precinct without being read his *Miranda* rights and without an attorney. Plaintiff remained at the 110th Precinct in a bullpen overnight and was taken to court the next day. While being processed, Plaintiff was asked about his mental health, and he admitted to "having a mental health history but let the person conducting the evaluation know that [he] wasn't currently symptomatic."[3] (ECF 1, at 6.) Plaintiff was taken back to the police precinct, but later returned to court and was introduced to his first attorney, who informed him that there was evidence with Plaintiff's DNA on it. Because Plaintiff could not afford to post bail, he was taken to Rikers Island.

On January 9, 2023, while he was detained at Rikers Island, Plaintiff was slashed in front of a correction officer and received 16 stitches for his injury.[4] Four days later, on January 13, 2023, Plaintiff tested positive for Covid-19.[5] Plaintiff was quarantined, and his court dates had to be rescheduled. While he was in quarantine Plaintiff, who is a "registered Baha'i," requested to see the chaplain, because he was "obligated to fast every March, between the 2nd-20th, or for 19 days." (*Id*. at 7.) He spoke to the "Jewish Chaplain," and "gave him everything he need to get in

---

[3] The Court quotes from the complaint verbatim. All spelling, punctuation, and grammar are as in the original unless otherwise indicated.

[4] Plaintiff does not bring claims with respect to that alleged slashing incident in this action. He alleges that he presently has an attorney "handling that suit on [his] behalf." (ECF 1, at 7.)

[5] Plaintiff previously filed an action in this court in which he asserted that he received inadequate medical care after he tested positive for Covid-19. *See Slade v. Corr. Health John Doe*, No. 23-CV-1419 (LTS) (S.D.N.Y. Apr. 25, 2023). After Plaintiff was granted 60 days' leave to amend his complaint, he voluntarily withdrew the action. *See* ECF 1:23-CV-1419, 10.

touch with [his] National Spiritual Assembly." (*Id*. at 8.) Plaintiff asserts that "[t]he facility did not recognize [his] religion so they didn't accommodate [him] on his fast." (*Id*.)

On January 30, 2023, Plaintiff was arraigned, and his next court date was set for March 1, 2023. On that date, Plaintiff's attorney informed him that they were waiting for the District Attorney ("DA") to submit a "certificate of compliance, and if the document was not submitted, there was a chance that he would go home. (*Id*.) By the next court date, Plaintiff's case had been transferred to a new attorney, Defendant Peter Barta, who informed him that the DA had filed the certificate and now there were 600 pieces of evidence with Plaintiff's DNA. Barta told Plaintiff that his case was "not triable," and that the DA's first offer was "15 to life." (*Id*.)

Plaintiff was "devastated" and became "paranoid" and "scared" about the possibility of spending the rest of his life in prison, and he agreed to get a psychiatric evaluation. (*Id*. at 9.) He consulted with a Forensic Psychologist a few times via video conference and once in person. Plaintiff asserts the following:

> [i]t was a very agitating experience and everyone started suggesting that I take medication, even though I feel competent without it. You sending me to prison for the rest of my life and you want me to be a victim doped up on psych meds? How am I going to safeguard myself?

(*Id*.)

On November 1, 2023, Plaintiff was taken to Bellevue Hospital and admitted to the psychiatric unit. His assigned doctor, Dr. Aggawal, "kept forcing [him] to take meds and [he] kept refusing" because he didn't think he needed them, as he was "not symptomatic," nor "homicidal, suicidal, or actively psychotic." (*Id*. at 10.) Dr. Aggawal told him that he would only return to Rikers Island if he took the medication, and that he could be mandated by the court to take it. Plaintiff asserts that, "against his best judgment," he acquiesced to taking the lowest dosage of Abilify. (*Id*.) However, once he started on the medication, Dr. Aggawal kept increasing

4

the dosage, and then informed him that he would not return to Rikers Island until he took "bi-monthly injection of 1,064 milligrams of Abilify Aristada." (*Id.*)

On December 13, 2023, Plaintiff was taken to court from Bellevue, and learned that his case had been transferred to a new prosecutor. The next day, he returned to Rikers Island and discovered that his property was missing.

## DISCUSSION

### A.    Severance of claims arising outside this District

Rules 18 and 20 of the Federal Rules of Civil Procedure govern the joinder of claims and parties, respectively. Rule 18 permits a plaintiff to join as many claims as she has against a particular defendant. *See* Fed. R. Civ. P. 18(a). By contrast, under Rule 20, a plaintiff may not pursue unrelated claims against multiple defendants. *Deskovic v. City of Peekskill*, 673 F. Supp. 2d 154, 167 (S.D.N.Y. 2009).

Rule 20(a)(2) permits a plaintiff to join multiple defendants in one action if: (1) a right to relief is asserted against all of the defendants, or the claims arise out of the same transaction, occurrence, or series of transactions, and (2) questions of law or fact are common to all defendants. *See id.* Although courts have interpreted Rule 20(a) liberally to allow related claims to be tried within a single proceeding, *Barr Rubber Prods. Co. v. Sun Rubber Co.*, 425 F.2d 1114, 1126-27 (2d Cir. 1970), "the mere allegation that Plaintiff was injured by all Defendants is not sufficient to join unrelated parties as defendants in the same lawsuit pursuant to Rule 20(a)," *Deskovic*, 673 F. Supp. 2d at 167.

Rule 21 of the Federal Rules of Civil Procedure provides that, "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party." Fed. R. Civ. P. 21. In determining whether to sever a claim, courts consider "the two requirements of Rule 20 and additional factors, including (1) whether severance will serve

judicial economy; (2) whether prejudice to the parties would be caused by severance; and (3) whether the claims involve different witnesses and evidence." *Kehr v. Yamaha Motor Corp.*, 596 F. Supp. 2d 821, 826 (S.D.N.Y. 2008) (relying on *Laureano v. Goord*, No. 06-CV-7845 (SHS) (RLE), 2007 WL 2826649, at *8 (S.D.N.Y. Aug. 31, 2007)). Put simply, courts "look to the logical relationship between the claims and determine 'whether the essential facts of the various claims are so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit.'" *Kalie v. Bank of Am. Corp.*, No. 12-CV-9192 (PAE), 2013 WL 4044951, at *3 (S.D.N.Y. Aug. 9, 2013) (quoting *United States v. Aquavella*, 615 F.2d 12, 22 (2d Cir. 1979)).

Plaintiff brings claims arising out of his arrest and criminal proceedings in Queens County. He also asserts claims in connection with his detention at Rikers Island and his hospitalization at Bellevue Hospital. Joinder of the claims arising from Plaintiff's arrest and criminal proceedings and the claims arising from events at Rikers and Bellevue does not comport with Rule 20(a). These claims are not logically connected. *See Webb v. Maldanado*, No. 13-CV-144 (RNC), 2013 WL 3243135, at *3 (D. Conn. June 26, 2013) ("Unrelated claims against different defendants belong in different suits . . . to prevent the sort of morass" created by a complaint with more than twenty defendants and countless unrelated claims. (quotation and citation omitted)).

For these reasons, the Court concludes that it is appropriate to sever Plaintiff's claims arising from his arrest and criminal proceedings from the claims arising out of his detention at Rikers and Bellevue. The Court therefore severs those claims.

**B.      Transfer of claims arising in Queens County**

When a court orders the severance of claims, it creates two or more separate "actions,"

and the court may transfer one separate action while retaining jurisdiction of another. *Wyndham*

*Assoc. v. Bintliff*, 398 F.2d 614, 618 (2d Cir. 1968).

Under 28 U.S.C. § 1391(b), a civil action may be brought in

(1) a judicial district in which any defendant resides, if all defendants are residents
of the State in which the district is located; (2) a judicial district in which a
substantial part of the events or omissions giving rise to the claim occurred, or a
substantial part of property that is the subject of the action is situated; or (3) if
there is no district in which an action may otherwise be brought as provided in
this section, any judicial district in which any defendant is subject to the court's
personal jurisdiction with respect to such action.

Under Section 1391(c), a "natural person" resides in the district where the person is

domiciled, and an "entity with the capacity to sue and be sued" resides in any judicial district

where it is subject to personal jurisdiction with respect to the civil action in question. *See* 28

U.S.C. § 1391(c)(1), (2).

The severed claims arise out of Plaintiff's arrest and criminal proceedings and are against

the City of New York, NYPD, John Doe police officers, Queens Defenders, and his criminal

defense attorney. It is clear that the City of New York and the NYPD reside both within this

judicial district and in the Eastern District of New York.[6] However, because Plaintiff does not

allege where any of the other defendants reside, it is unclear whether this court is a proper venue

for this action under Section 1391(b)(1). It is also clear that the events that are the bases for

---

[6] This judicial district, the Southern District of New York, is comprised of the following
New York State counties: (1) New York (New York City Borough of Manhattan); (2) Bronx
(New York City Borough of the Bronx); (3) Westchester; (4) Dutchess; (5) Rockland;
(6) Orange; (7) Putnam; and (8) Sullivan. 28 U.S.C. § 112(b). The Eastern District of New York
is comprised of the following New York State counties: (1) Kings (New York City Borough of
Brooklyn); (2) Queens (New York City Borough of Queens); (3) Richmond (New York City
Borough of Staten Island); (4) Nassau; and (5) Suffolk. 28 U.S.C. § 112(c).

Plaintiff's claims arising from his arrest and criminal proceedings all occurred in Queens County, New York, within the Eastern District of New York, *see* 28 U.S.C. § 112(c). Thus, the United States District Court for the Eastern District of New York is a proper venue for this action under Section 1391(b)(2).

Under 28 U.S.C. § 1404(a), even if an action is filed in a federal district court where venue is proper, a court may transfer the action to any other federal district court where it might have been brought "[f]or the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). In determining whether transfer is appropriate, courts consider the following ten factors: (1) the convenience of witnesses; (2) the convenience of the parties; (3) the locus of operative facts; (4) the availability of process to compel the attendance of unwilling witnesses; (5) the location of relevant documents and the relative ease of access to sources of proof; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight accorded to the plaintiff's choice of forum; (9) trial efficiency; and (10) the interest of justice, based on the totality of circumstances. *Keitt v. N.Y. City*, 882 F. Supp. 2d 412, 458-59 (S.D.N.Y. 2011); *see also N.Y. Marine & Gen. Ins. Co. v. LaFarge N. Am., Inc.*, 599 F.3d 102, 112 (2d Cir. 2010) (setting forth similar factors). A plaintiff's choice of forum is accorded less deference where the plaintiff does not reside in the chosen forum and the operative events did not occur there. *See Iragorri v. United Tech. Corp.*, 274 F.3d 65, 72 (2d Cir. 2001).

Under Section 1404(a), transfer of the severed claims appears to be appropriate. The underlying events occurred in Queens County, where most of the defendants are employed, and it is reasonable to expect that all relevant documents and witnesses also would be in Queens County. The Eastern District of New York appears to be a more convenient forum for the severed claims. Based on the totality of the circumstances, the Court concludes that it is in the interest of

justice to transfer the severed claims to the United States District Court for the Eastern District of New York. 28 U.S.C. § 1404(a); *see D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 106 (2d Cir. 2006) ("District courts have broad discretion in making determinations of convenience under Section 1404(a) and notions of convenience and fairness are considered on a case-by-case basis.").

## C.  Order to amend claims arising in the Southern District of New York

### 1.  Rikers Island Claims

#### a.  DOC and the City of New York

With respect to his claims arising out of his detention at Rikers Island, Plaintiff names DOC and the City of New York as defendants. Plaintiff's claims against DOC must be dismissed because an agency of the City of New York is not an entity that can be sued. N.Y. City Charter ch. 17, § 396 ("[A]ll actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the city of New York and not in that of any agency, except where otherwise provided by law."); *Jenkins v. City of New York*, 478 F.3d 76, 93 n.19 (2d Cir. 2007); *see also Emerson v. City of New York*, 740 F. Supp. 2d 385, 396 (S.D.N.Y. 2010) ("[A] plaintiff is generally prohibited from suing a municipal agency."). The Court therefore dismisses Plaintiff's claims against DOC. *See* N.Y. City Charter ch. 17, § 396.

As for his claims against the City of New York, Plaintiff fails to state a claim upon which relief can be granted. When a plaintiff sues a municipality like the City of New York under Section 1983, it is not enough for the plaintiff to allege that one of the municipality's employees or agents engaged in some wrongdoing. The plaintiff must show that the municipality itself caused the violation of the plaintiff's rights. *See Connick v. Thompson*, 563 U.S. 51, 60 (2011) ("A municipality or other local government may be liable under this section [1983] if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be

subjected' to such deprivation." (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 692 (1978))); *Cash v. Cnty. of Erie*, 654 F.3d 324, 333 (2d Cir. 2011). In other words, to state a Section 1983 claim against a municipality, the plaintiff must allege facts showing (1) the existence of a municipal policy, custom, or practice, and (2) that the policy, custom, or practice caused the violation of the plaintiff's constitutional rights. *See Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012); *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 403 (1997) (internal citations omitted).

Here, Plaintiff alleges no facts suggesting that the City of New York has a policy, practice, or custom that has caused a violation of his constitutional right. Moreover, as discussed below, Plaintiff has not alleged facts suggesting an underlying constitutional violation. *See Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (absent an underlying constitutional violation, there can be no *Monell* liability). If Plaintiff names the City of New York as a defendant in his amended complaint, he must allege facts suggesting that the City has a policy, practice, or custom that caused a violation of his constitutional rights.

### b. Religious freedom claims

Plaintiff provides an account of various violations that allegedly occurred during his detention at Rikers Island, including a slashing that occurred on January 9, 2023, his testing positive for Covid-19 on January 13, 2023, not being able to do a religious fast in accordance with his Baha'i faith, and the loss of his property. Plaintiff has previously brought an action concerning his Covid-19 infection, and he asserts that an attorney is currently pursuing an action for the alleged slashing on his behalf. Therefore, Plaintiff's only remaining claims in this action arising from his detention at Rikers Island are his claims that "[t]he facility did not recognize [his] religion so they didn't accommodate [him] on his fast," although he had spoken to a chaplain about it, and that his property went missing while he was at Bellevue. (ECF 1, at 8.)

10

The Court construes Plaintiff's claims that correction staff or officials inhibited his right to practice his religion as claims under the Free Exercise Clause of the First Amendment and under the Religious Land Use and Institutionalized Persons Act ("RLUIPA").

### i. First Amendment

It is well established that the First Amendment affords prisoners constitutional protection to practice their religion. *See O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) (holding that "[i]nmates clearly retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion" (internal quotation marks and citations omitted)); *see also Kravitz v. Purcell*, 87 F.4th 111, 127 (2d Cir. 2023) (same). However, in the prison context, alleged violations of the right to free exercise are "judged under a 'reasonableness' test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights." *Id.* at 349; *see Benjamin v. Coughlin*, 905 F.2d 571, 574 (2d Cir. 1990) ("Balanced against the constitutional protections afforded prison inmates, including the right to free exercise of religion, are the interests of prison officials charged with complex duties arising from administration of the penal system." (citation omitted)).

To assess a prisoner's free exercise claim, "a court must determine (1) whether the practice asserted is religious in the person's scheme of beliefs, and whether the belief is sincerely held; (2) whether the challenged practice of the prison officials infringes upon the religious belief; and (3) whether the challenged practice of the prison officials furthers legitimate penological objectives." *Kravitz*, 87 F.4th at 128 (quoting *Farid v. Smith*, 850 F.2d 917, 926 (2d Cir. 1988) (alterations adopted)). As long as a restriction on an inmate's religious practice "is reasonably related to legitimate penological interests," that restriction does not violate the First Amendment. *Turner v. Safely*, 482 U.S. 78, 89 (1987). A plaintiff must also show that a

defendant acted "with at least deliberate indifference in depriving an inmate of the ability to engage in a religious practice." *Kravitz*, 87 F.4th at 129.

Here, Plaintiff alleges that his rights were violated when correction staff failed to accommodate the nineteen-day fast that his Baha'i faith required, from March 2 to March 20, 2023. Plaintiff does not, however, allege how correction staff failed to accommodate his fast or otherwise inhibit his right to freely practice his religion. Nor does he name as a defendant any individual officer or other state actor who was personally involved in violating his Free Exercise rights.

The Court grants Plaintiff leave to amend his complaint to replead his First Amendment Free Exercise claim to state facts showing that he was inhibited from freely practicing his religion and to name as defendants the individual DOC officers who were personally involved in violating his rights.

### ii. RLUIPA

Under RLUIPA, the government may not "substantial[ly] burden" an institutionalized person's religious exercise unless the burden furthers a compelling governmental interest by the least restrictive means. *Jova v. Smith*, 582 F.3d 410, 415 (2d Cir. 2009). RLUIPA provides institutionalized persons with "greater protection" to exercise their religious beliefs than the First Amendment does. *Holt v. Hobbs*, 574 U.S. 352, 361-62 (2015) ("RLUIPA's 'substantial burden' inquiry asks whether the government has substantially burdened religious exercise . . ., not whether the RLUIPA claimant is able to engage in other forms of religious exercise."). A "substantial burden" is one that places "substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Singh v. Goord*, 520 F. Supp. 2d 487, 498 (S.D.N.Y. 2007) (citing, *inter alia*, *Jolly v. Coughlin*, 76 F.3d 468, 477 (2d Cir.1996)). Inconvenience alone is

insufficient to establish a substantial burden. *Id.* (citing *Westchester Day Sch. v. Vill. of Mamaroneck*, 379 F. Supp. 2d 550, 557 (S.D.N.Y. 2005)).

RLUIPA does not provide for monetary damages against state officials sued in their official capacities. *Sossamon v. Texas*, 563 U.S. 277, 293 (2011). Furthermore, the Second Circuit has held that RLUIPA does not create an implied private right of action against state officials in their individual capacities. *Washington v. Gonyea*, 731 F.3d 143, 145 (2d Cir. 2013) (per curiam). Thus, under RLUIPA, an incarcerated person may only seek injunctive relief against a state official.

Here, even if the Court assumes that Plaintiff has alleged a substantial burden on his religious exercise, he seeks only money damages; he does not seek injunctive relief, such as requesting that correction officials accommodate his religion by taking certain actions. Plaintiff therefore does not state a claim for relief under RLUIPA. If Plaintiff wishes to replead his RLUIPA claim in an amended complaint, he must specify the injunctive relief that he is seeking.

### c.  Loss of property

A claim for deprivation of property is not recognized in federal court if the relevant state court provides a remedy for the deprivation of that property. *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *Marino v. Ameruso*, 837 F.2d 45, 47 (2d Cir. 1988) (citations omitted). "[T]he availability of an action in the Court of Claims provides [an] adequate post-deprivation remedy for prisoners who claim deprivation of personal property by prison officials." *Jones v. Harris*, 665 F. Supp. 2d 384, 401 (S.D.N.Y. 2009) (describing procedure available to state prisoners). Thus, "even the intentional destruction of an inmate's property by a prison officer does not violate the Due Process Clause if the state provides that inmate with an adequate post-deprivation remedy." *Little v. Mun. Corp.*, 51 F. Supp. 3d 473, 499 (S.D.N.Y. 2014) (identifying

that New York state law provides pretrial detainees with an adequate post-deprivation remedy, that is, Section 9 of the Court of Claims Act).

Plaintiff alleges that, upon his return to Rikers Island from Bellevue, his personal property could not be located. To the extent he seeks damages for the loss of property, he fails to allege facts demonstrating that his available state remedies are in any way inadequate. *See Butler v. Castro*, 896 F.2d 698, 700-04 (2d Cir. 1990). Plaintiff's claim concerning the loss of his property is therefore dismissed for failure to state a claim upon which relief can be granted in this court. *See* 28 U.S.C. § 1915(e)(2)(B)(ii). This dismissal does not preclude him from seeking relief on his property loss claim in state court.

### 2. Bellevue Hospital Claims

#### a. H+H

Plaintiff names H+H as a defendant, apparently seeking to hold it responsible for the alleged violations of his rights at Bellevue by Dr. Aggawal. As with claims against the City of New York, however, to pursue claims against H+H based on the conduct of one of that agency's employees, Plaintiff must facts suggesting that a municipal policy, custom, or practice of H+H resulted in or contributed to a violation of his constitutional rights. Plaintiff' s allegations do not suggest that H+H has a policy, custom, or practice that caused a violation of his federal constitutional rights. Furthermore, as explained below, because Plaintiff's assertions concerning Dr. Aggawal are not sufficient to show an underlying constitutional violation, it follows that he does not state a viable Section 1983 claim for municipal liability against H+H. *See Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006) ("Because the district court properly found no underlying constitutional violation, its decision not to address the municipal defendants' liability under [Section 1983] was entirely correct."). The Court therefore dismisses Plaintiff' s claims

under Section 1983 against H+H for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

If Plaintiff can provide facts showing that H+H has a policy, custom, or practice that violated his federal constitutional rights, he may allege such facts in an amended complaint.

### b. Forcible medication claims

The Fourteenth Amendment protects the right of a competent person to refuse unwanted medical treatment. *See, e.g.*, *Cruzan v. Dir., Mo. Dep't of Health*, 497 U.S. 261, 278 (1990) (recognizing "[t]he principle that a competent person has a constitutionally protected liberty interest in refusing unwanted medical treatment"); *Kulak v. City of N.Y.*, 88 F.3d 63, 74 (2d Cir.1996) ("It is a firmly established principle of the common law of New York that every individual of adult years and sound mind has a right to determine what shall be done with his own body and to control the course of his medical treatment." (quotations omitted)). "[I]t is well-settled [however] that a patient's liberty interest in not being involuntarily medicated is overridden in an emergency, where failure to medicate forcibly would result in a substantial likelihood of physical harm to that patient, other patients, or to staff members of the institution." *Odom v. Bellevue Hosp. Ctr.*, No. 93-CV-2794 (CSH), 1994 WL 323666 at *3 (S.D.N.Y. July 5, 1994); *see, e.g.*, *Kulak*, 88 F.3d at 74 ("Such a right may be set aside only in narrow circumstances, including those where the patient 'presents a danger to himself or other members of society or engages in dangerous or potentially destructive conduct within the institution.'"). A "decision, if made by a professional, is presumptively valid; liability may be imposed only when the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Youngberg v. Romeo*, 457 U.S. 307, 323, (1982). "This

standard requires more than simple negligence on the part of the doctor but less than deliberate indifference." *Kulak*, 88 F.3d at 75.

Here, Plaintiff's allegations do not suggest that he was medicated involuntarily. Plaintiff acknowledges that he went to Bellevue because he was having mental health issues. Once there, Dr. Aggawal informed him that he could not return to Rikers Island unless he took his medication and that a court could mandate him to take it, and although he didn't think he needed it, he acquiesced to taking a low dosage of Abilify. Plaintiff contends, however, that, after his initial acquiescence to the medication, Dr. Aggawal increased the dosage. It appears from Plaintiff's assertions that he may have been experiencing a mental health crisis, but he does not provide sufficient facts for the Court to evaluate whether he actually refused the additional medication, whether the medical treatment he received at Bellevue was provided in the context of an emergency situation or whether, if he refused, he had an opportunity for further review of the decision to medicate him.

In light of Plaintiff's *pro se* status, the Court grants him 60 days' leave to replead his claims in an amended complaint. Plaintiff must provide facts supporting his claim that he was forcibly medicated against his will, without due process, in the absence of an emergency health situation. Plaintiff must also name as defendants all individuals who could be held responsible for this alleged violation.

**D.    State law claims**

A district court may decline to exercise supplemental jurisdiction of state law claims when it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Generally, "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988).

Because Plaintiff has been granted leave to file an amended complaint, the Court will determine at a later stage whether to exercise its supplemental jurisdiction of any state law claims he may be asserting. *See Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("Subsection (c) of § 1367 'confirms the discretionary nature of supplemental jurisdiction by enumerating the circumstances in which district courts can refuse its exercise.'" (quoting *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997))).

## LEAVE TO AMEND

Plaintiff proceeds in this matter without the benefit of an attorney. District courts generally should grant a self-represented plaintiff an opportunity to amend a complaint to cure its defects, unless amendment would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Indeed, the Second Circuit has cautioned that district courts "should not dismiss [a *pro se* complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999)). Because Plaintiff may be able to allege additional facts to state viable Section 1983 claims concerning correction staff inhibiting the practice of his religion at Rikers Island and being forcibly medicated at Bellevue, the Court grants Plaintiff 60 days' leave to amend his complaint to detail those claims.

Plaintiff is granted leave to amend his complaint to provide more facts about his claims arising at Rikers Island and Bellevue Hospital. Plaintiff must name as the defendant(s) in the caption[7] and in the statement of claim those individuals who were allegedly involved in the

---

[7] The caption is located on the front page of the complaint. Each individual defendant must be named in the caption. Plaintiff may attach additional pages if there is not enough space to list all of the defendants in the caption. If Plaintiff needs to attach an additional page to list all defendants, he should write "see attached list" on the first page of the amended complaint. Any

deprivation of his federal rights. If Plaintiff does not know the name of a defendant, he may refer to that individual as "John Doe" or "Jane Doe" in both the caption and the body of the amended complaint.[8] The naming of John Doe defendants, however, does *not* toll the three-year statute of limitations period governing this action and Plaintiff shall be responsible for ascertaining the true identity of any "John Doe" defendants and amending his complaint to include the identity of any "John Doe" defendants before the statute of limitations period expires. Should Plaintiff seek to add a new claim or party after the statute of limitations period has expired, he must meet the requirements of Rule 15(c) of the Federal Rules of Civil Procedure.

In the "Statement of Claim" section of the amended complaint form, Plaintiff must provide a short and plain statement of the relevant facts supporting each claim against each defendant. If Plaintiff has an address for any named defendant, Plaintiff must provide it. Plaintiff should include all of the information in the amended complaint that Plaintiff wants the Court to consider in deciding whether the amended complaint states a claim for relief. That information should include:

a) the names and titles of all relevant people;

b) a description of all relevant events, including what each defendant did or failed to do, the approximate date and time of each event, and the general location where each event occurred;

c) a description of the injuries Plaintiff suffered; and

d) the relief Plaintiff seeks, such as money damages, injunctive relief, or declaratory relief.

---

defendants named in the caption must also be discussed in Plaintiff's statement of claim.

[8] For example, a defendant may be identified as: "Correction Officer John Doe #1 on duty August 31, 2023, at the Otis Bantum Correctional Center, during the 7-3 p.m. shift."

Essentially, Plaintiff's amended complaint should tell the Court: who violated his federally protected rights and how; when and where such violations occurred; and why Plaintiff is entitled to relief.

Because Plaintiff's amended complaint will completely replace, not supplement, the original complaint, any facts or claims that Plaintiff wants to include from the original complaint must be repeated in the amended complaint.

## CONCLUSION

The Court severs Plaintiff's claims arising out of his arrest and criminal proceedings in Queens County, New York. The Clerk of Court is directed to transfer Plaintiff's severed claims against the City of New York, NYPD, Queens Defenders, John Doe Detective # 1, John Doe Detective # 2, and Peter Barta to the United States District Court for the Eastern District of New York.

The Court dismisses Plaintiff's claims against the New York City Department of Correction. *See* N.Y. City Charter ch. 17, § 396.

The City of New York remains a defendant in this action with NYC Health & Hospitals and Dr. Aggawal. The Clerk of Court is directed to terminate all other defendants.

Plaintiff is granted leave to file an amended complaint asserting claims arising out of his detention at Rikers Island and his hospitalization at Bellevue Hospital that complies with the standards set forth above. Plaintiff must submit the amended complaint to this Court's Pro Se Intake Unit within 60 days of the date of this order, caption the document as an "Amended Complaint," and label the document with docket number 24-CV-0514 (LTS). An Amended Civil Rights Complaint form is attached to this order. No summons will issue at this time. If Plaintiff fails to comply within the time allowed, and he cannot show good cause to excuse such failure, the complaint will be dismissed for failure to state a claim upon which relief may be granted and

the Court will decline, under 28 U.S.C. § 1367(c)(3), to exercise supplemental jurisdiction of any state law claims he may be asserting.

The Court certifies, pursuant to 28 U.S.C § 1915(a)(3), that any appeal from this order would not be taken in good faith, and therefore IFP status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

Dated:  September 5, 2024
        New York, New York

                                        /s/ Laura Taylor Swain
                                        LAURA TAYLOR SWAIN
                                        Chief United States District Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

_____

Write the full name of each plaintiff.

-against-

_____

_____

_____

_____

Write the full name of each defendant. If you cannot fit the names of all of the defendants in the space provided, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. The names listed above must be identical to those contained in Section IV.

_____CV_____
(Include case number if one has been assigned)

**AMENDED**
**COMPLAINT**
(Prisoner)

Do you want a jury trial?
☐ Yes    ☐ No

---

**NOTICE**

The public can access electronic court files. For privacy and security reasons, papers filed with the court should therefore *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number. See Federal Rule of Civil Procedure 5.2.

## I.    LEGAL BASIS FOR CLAIM

State below the federal legal basis for your claim, if known. This form is designed primarily for prisoners challenging the constitutionality of their conditions of confinement; those claims are often brought under 42 U.S.C. § 1983 (against state, county, or municipal defendants) or in a "*Bivens*" action (against federal defendants).

☐  Violation of my federal constitutional rights

☐  Other: _____

## II.    PLAINTIFF INFORMATION

Each plaintiff must provide the following information. Attach additional pages if necessary.

First Name                    Middle Initial              Last Name

State any other names (or different forms of your name) you have ever used, including any name you have used in previously filing a lawsuit.

Prisoner ID # (if you have previously been in another agency's custody, please specify each agency and the ID number (such as your DIN or NYSID) under which you were held)

Current Place of Detention

Institutional Address

County, City                              State                    Zip Code

## III.    PRISONER STATUS

Indicate below whether you are a prisoner or other confined person:

☐  Pretrial detainee
☐  Civilly committed detainee
☐  Immigration detainee
☐  Convicted and sentenced prisoner
☐  Other: _____

## IV.    DEFENDANT INFORMATION

To the best of your ability, provide the following information for each defendant. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are identical to those listed in the caption. Attach additional pages as necessary.

Defendant 1:

First Name                      Last Name                          Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City                          State                  Zip Code

Defendant 2:

First Name                      Last Name                          Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City                          State                  Zip Code

Defendant 3:

First Name                      Last Name                          Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City                          State                  Zip Code

Defendant 4:

First Name                      Last Name                          Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City                          State                  Zip Code

## V.    STATEMENT OF CLAIM

Place(s) of occurrence: _____

Date(s) of occurrence: _____

**FACTS:**

State here briefly the FACTS that support your case. Describe what happened, how you were harmed, and how each defendant was personally involved in the alleged wrongful actions. Attach additional pages as necessary.

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

**INJURIES:**

If you were injured as a result of these actions, describe your injuries and what medical treatment, if any, you required and received.

_____

_____

_____

_____

_____

## VI.    RELIEF

State briefly what money damages or other relief you want the court to order.

_____

_____

_____

_____

_____

_____

_____

## VII.   PLAINTIFF'S CERTIFICATION AND WARNINGS

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I understand that if I file three or more cases while I am a prisoner that are dismissed as frivolous, malicious, or for failure to state a claim, I may be denied *in forma pauperis* status in future cases.

I also understand that prisoners must exhaust administrative procedures before filing an action in federal court about prison conditions, 42 U.S.C. § 1997e(a), and that my case may be dismissed if I have not exhausted administrative remedies as required.

I agree to provide the Clerk's Office with any changes to my address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to proceed without prepayment of fees, each plaintiff must also submit an IFP application.

| | |
|---|---|
| _____ | _____ |
| Dated | Plaintiff's Signature |

| | | |
|---|---|---|
| _____ | _____ | _____ |
| First Name | Middle Initial | Last Name |

_____
Prison Address

| | | |
|---|---|---|
| County, City | State | Zip Code |

Date on which I am delivering this complaint to prison authorities for mailing: _____